UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN M. MYLAND,

        Plaintiff,

v.                                                                   Case No. 1:16-cv-44
                                                                     Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of April 17, 2012.  PageID.216.  Plaintiff identified his disabling conditions as: chronic pain; mood disorder; depression; post traumatic stress disorder (PTSD); anxiety; chronic right elbow pain; chronic back pain; chronic headaches; and prinzmetal angina.  PageID.220.   He completed a GED and had past employment as a delivery manager for a furniture leasing business, truck driver, and a security specialist at a hospital.  PageID.84-85, 221.  The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 18, 2014.  PageID.48-62.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).   In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.   Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff engaged in substantial gainful activity during a portion of the relevant time period

(from his alleged onset date in April 2012 through November 2012).  PageID.50.  However, the ALJ

also found that despite having engaged in substantial gainful employment for several months after

the alleged onset date, there has been a continuous 12-month period during which plaintiff did not

engage in substantial gainful activity, and that he met the insured status of the Social Security Act

("Act") through December 31, 2017.  *Id*.  At the second step, the ALJ found that plaintiff had severe

impairments of degenerative disc disease lumbar spine; history of remote in time T11 compression

fracture (thoracic spine); dysthymic disorder; anxiety disorder; PTSD; pain disorder; and narcotic

dependence.  PageID.51.  At the third step, the ALJ found that plaintiff did not have an impairment

or combination of impairments that met or equaled the requirements of the Listing of Impairments

in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.

The ALJ decided at the fourth step that plaintiff had the residual functional capacity

(RFC) to perform "to perform medium work as defined in 20 CFR 404.1567(c) except occasional

climbing and occasional balancing; can perform simple, repetitive work with occasional public

contact and no fast-paced work."  PageID.53.  The ALJ also found that plaintiff was unable to

perform any past relevant work.  PageID.60.

At the fifth step, the ALJ determined that plaintiff could perform a significant number

of unskilled, medium exertional jobs in the national economy.  PageID.61.  Specifically, the ALJ

found that plaintiff could perform the following unskilled work in the region (defined as the State

of Michigan): laborer (medium) (17,000 jobs); custodial (medium) (38,000 jobs); and custodial

(light) (13,000 jobs).  *Id*.  Accordingly, the ALJ determined that plaintiff has not been under  a

disability, as defined in the Social Security Act, from April 17, 2012 (the alleged onset date) through

July 18, 2014 (the decision date).  *Id*.

4

## III.   DISCUSSION

Plaintiff raised three issues on appeal:

### A.   Did the Commissioner violate the regulations requiring controlling weight for treating medical source opinions?

Plaintiff contends that the ALJ improperly failed to give controlling weight to the opinion of his psychologist, David Russell, Ed.D.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and

(2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ performed a lengthy evaluation of Dr. Russell's opinion:

In addition, there is a multitude of options [sic] from David Russell Ed.D., the treating psychologist.  The undersigned has read and considered each opinion and statement offered by Dr. Russell during the period he treated the claimant.  Dr. Russell at various times stated the claimant was disabled, that he had serious emotional issues, that his problems were not likely to resolve, that he should file for disability, etc.  In sum, the majority of the opinions from Dr. Russell were that the claimant was essentially severely disabled and incapable of performing any type of work (Ex 2F/12-13, 4F, 5F, l0F, 12F/8, 13F/16, and 16F).

However, with only two exceptions, the opinions offered by Dr. Russell are given little weight.  This is because some of these "disabled" statements were offered at a time when the claimant was still working, which inherently limits their support to the claimant's allegations (Ex 2F/12-13 and 5F).  Moreover, many of the statements and opinions offered by Dr. Russell are conclusory in nature, and the finding of disability is an issue reserved for the Commissioner.  Also, Dr. Russell's own therapy notes are not entirely consistent with the claimant's alleged level of impairment.  Specifically, one therapy noted showed the claimant's symptoms were improved with medication, and that the claimant even went Christmas shopping on December 18, 2013.  Not only is this inconsistent with the claimant's statements and the limitations offered by Dr. Russell, subsequent therapy notes documented the claimant's admission that he enjoyed going out and riding his motorcycle with one of his friends (Ex 12F/2 and 14).

Yet, in addition to the disabling opinions of Dr. Russell, the record also contains two Mental Residual Functional Capacity (RFC) Assessment forms completed by Dr. Russell.  One of these is from December 2012, and the other is from September 2013.  What both of these have in common is that they are startling when compared to Dr. Russell's other opinions of record.  Specifically, each of these forms showed the claimant was, at most, only moderately limited in his ability to

function (Ex 13F/7-13). Interestingly, there is no rational provided as to the opposing nature of the mental RFC forms compared to Dr. Russell's other opinions.

In these mental RFC assessments, Dr. Russell indicated the claimant could understand, remember, and carry out simple instructions, but would have some difficulty maintaining attention and concentration (Ex 13F/7-13). Interestingly, the claimant was not significantly limited in his ability to interact appropriately with the public or maintain socially appropriate behavior. Although other limitations were given they revealed the claimant was only moderately impaired. The undersigned also considered these opinions carefully, but despite their apparent similarity with some of the medical evidence of record, these two mental RFC forms by Dr. Russell are only given partial weight as the majority of the records indicate the claimant had at least some limitation dealing with others. In addition, despite all of his opinions and statements, the fact that only moderate limitations were essentially offered to the claimant undermines Dr. Russell's other statements of disability, which in turn undermines the GAF scores he assigned to the claimant elsewhere in the record. Even Dr. Russell's own notes showed that the claimant's prognosis was improved with treatment (Ex 12F/4). Finally, the primary care notes regularly showed no indication of significant mental health issues.

PageID.58-59.

Plaintiff contends that the ALJ's decision was deficient because: (1) the opinion lacked any discussion of whether the treating opinions are well supported by medically acceptable diagnostic techniques; (2) the ALJ did not acknowledge the length of the treating relationship nor the frequency of examination; and, (3) plaintiff's GAF score of 50 or below means a serious impairment.[1] With respect to plaintiff's first contention, the ALJ did not contest that Dr. Russell's opinion was based on medically acceptable clinical and laboratory diagnostic techniques. Rather,

---

[1] The Global Assessment of Functioning or "GAF" score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

the ALJ found that he was not bound by Dr. Russell's opinions because the opinions were inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. With respect to plaintiff's second contention, the ALJ identified Dr. Russell as a treating psychologist and evaluated the doctor as such. PageID.58. The ALJ's decision to give Dr. Russell's opinions little weight were based upon the content of the opinions without questioning the doctor's status as a treating psychologist.

With respect to plaintiff's third contention, plaintiff's GAF score is not determinative of disability. The Sixth Circuit has recognized that a GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). As that court observed, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.* citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir.2002). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir. 2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). Accordingly, plaintiff's claim of error will be denied.

**B.     Did the Commissioner follow the applicable regulatory requirements in refusing to consider treating medical source opinions?**

Next, plaintiff contends that the ALJ erred when he gave great weight to the opinion of a non-examining physician, Ruqiya Tareen, M.D.  As an initial matter, plaintiff incorrectly refers to Dr. Ruqiya Tareen as both "Dr. Tarren" and "Dr. Raqiya, M.D."  *See* Brief (docket no. 15, PageID.690, 695).  Plaintiff contends that neither Dr. Tarren nor Dr. Raqiya is as qualified as his psychiatrist, Dr. Iqbal Hussain.  Plaintiff refers to Dr. Tarren as "a state agency psychologist consultant who never examined the Claimant," notes that "Dr. Tarren is listed as 'M.D.' but there is nothing in this record to identify any form of specialty training or psychological specialization," that there is no other psychiatrist or mental health physician rendering opinions in this matter, and that "[t]he only 'M.D.' would be the non-examining Dr. Tarren and there is no evidence of any specialization as a psychiatrist."  PageID.690.  Plaintiff then contends that the ALJ violated the applicable regulations for treating source opinions by assigning great weight to Dr. Raqiya's opinion:

> In his opinion the ALJ gave Dr. Raqiya, M.D., "a state agency psychological consultant," "great weight" (Page ID; 31 ).  If this 'consultant' is a medical doctor specializing in the care and treatment of mental illness, he would not be a 'psychological' consultant but rather a psychiatrist.

PageID.695.  Counsel's confusing attempt to discredit Dr. Tareen's opinion is meaningless surplusage and not helpful to the Court.  In this regard, Dr. Tareen identified her medical specialty as psychiatry.[2]

---

[2] Dr. Tareen included the medical code "037" in her signature, PageID.129, which indicates that her medical specialty was "psychiatry."  *See* Program System Operations Manual ("POMS") DI 24501.004(B) ("Medical Specialty Codes").

Putting aside plaintiff's attempts to discredit the expertise of the agency consultant, the issue raised by plaintiff is whether the ALJ improperly gave the opinion of a non-examining consultant, Dr. Tareen, great weight over the opinion of plaintiff's treating psychiatrist, Dr. Hussain. The ALJ discounted Dr. Houssain's opinion for the following reasons:

> Similar to the statements of Dr. Russell, Iqbal Hussain M.D., a treating psychiatrist, offered statements on two occasions, first in October 2013, then in March 2014 (Ex 7F and 9F).  Dr. Hussain indicated the claimant's long-term prognosis was guarded and that the claimant had GAF scores that fluctuated from around 45 to 50, which the doctor attributed to the claimant "still not feeling comfortable doing things  .  .  .  .  [such as] go[ing] outside by himself.  .  ." (Ex 9F/8).  However, the claimant admitted he went out riding his motorcycle, went Christmas shopping in late December 2013, and went to a birthday party at Craig's Cruisers, where other people were undoubtedly present with whom the claimant was not familiar.  Thus, the doctor's statements are not consistent with the claimant's admissions (Ex 12F/2 and 14F/17).  Moreover, the "guarded["] prognosis is inconsistent with the treating psychologist's statement that the claimant had improved with treatment.

> Additionally, in a deposition related to the claimant's worker's compensation suit against his former employer, Dr. Hussain opined that because of the stressful events and job duties while working as a security officer, the resulting PTSD from this work prevented the claimant's performance of any job activities (Ex 7F/11).  As with Dr. Hussain's other statements, the totality of the medical evidence of record, the opinions by other doctors in this case, and the claimant's admitted abilities offer limited support to the opinion.  Additionally, the finding of whether or not a claimant can perform job activities is an issue reserved for the Commissioner.  Accordingly, the undersigned gives Dr. Hussain's opinions limited weight.

PageID.59-60.

The ALJ gave good reasons for giving Dr. Houssain's opinion only limited weight, based in part on the inconsistency between the doctor's opinion and plaintiff's daily activities. Because the ALJ did not give Dr. Hussain's opinion controlling weight, he reviewed the other medical opinions pursuant to 20 C.F.R. § 404.1527(c)(2), which provides that "[u]nless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all

of the following factors in deciding the weight we give to any medical opinion." With respect to

agency consultants, the regulations state that such consultants are experts in Social Security disability

evaluation:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. *State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.* Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. § 404.1527(e)(2)(i) (emphasis added).

> Social Security Ruling (SSR) 96-6p gives guidance regarding the ALJ's method for

weighing the opinion of an agency consultant against the opinion of a treating physician, providing

in pertinent part:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6P, 1996 WL 374180 at *3 (July 2, 1996).

> Here, the ALJ assigned great weight to Dr. Tareen's opinion regarding plaintiff's

RFC:

> Ruqiya Tareen M.D., a State agency psychological consultant, opined the claimant could perform simple, routine tasks (Ex 2A). This opinion is consistent

11

with the claimant's admission of being capable of going out and riding his motorcycle.  It is also consistent with his ability to care for children during the day, drive a car, and prepare simple meals.  Accordingly, the opinion of Dr. Tareen is given great weight.

PageID.58.  As an agency consultant, Dr. Tareen is considered an expert on Social Security evaluation. 20 C.F.R. § 404.1527(e)(2)(i).  Having found that the opinions of plaintiff's treaters (Drs. Russell and Houssain) were not entitled to controlling weight, the ALJ could rely on the opinion of Dr. Tareen, which was based on a complete case record.  For these reasons, the undersigned concludes that the ALJ's evaluation of Dr. Tareen's opinion was supported by substantial evidence.  Accordingly, plaintiff's claim of error will be denied.

> **C.    Did the Commissioner err by denying benefits based on an ALJ's fact-finding which was not supported by the record?**

In his brief, plaintiff states that the ALJ engaged in "cherry picking" the evidence and engaging in misrepresentations:

> As noted above, the ALJ frequently cited evidence which did not support the finding.  The testimony and exhibits cited by the ALJ as supporting his conclusions do not. The ALJ cites exhibits and testimony but a close examination of the references cited do not support the conclusions.

Plaintiff's Brief at PageID.696.  The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir.2009).  The Defendant admits that the ALJ erred in stating that plaintiff performs household chores or yardwork. PageID.255-256.  However, the reason given by plaintiff was because it hurt his back, not due to incapacitating mental problems addressed by Drs. Russell, Hussain and Tareen. *Id*.

The ALJ found it notable that plaintiff drives, rides a motorcycle with a friend, and cares for two young children while his wife was at work.  PageID.54, 401.  While plaintiff hedged on the actual level of care he provides to the children.  In plaintiff's daily activity report, when asked if anyone helps him care for other people or animals, plaintiff responded yes, "wife, friends, family take care of childrens [sic] daily needs as well as help me."  PageID.254.  In her third-party function report, plaintiff's wife stated that plaintiff did not take care of children, and stated that "I have to take care of all the children myself."  PageID.266.  While plaintiff's wife stated that a friend "helps outside when I need it," there is no mention of family or friends helping with the children.  PageID.267.  At the administrative hearing, plaintiff testified that his wife worked part-time.  PageID.98.  When asked the direct question of "Who takes care of the kids?", plaintiff avoided making a direct response, stating "I have neighbors and family.  And like I said, she only works part-time, so -- and I have older kids that they all help out."  PageID.98-99.  When asked, "Okay, do you spend time taking care of your children?", plaintiff responded with the ambiguous answer, "Very little.  I guess that depends, I -- it depends on what you  mean by take care of them?".  PageID.99.  When asked, "Okay, well you've got two and a half year olds, they're probably pretty active running around the house?", plaintiff responded, "Yeah, I don't -- if you mean chase them around and doing diaper things is -- no, I guess not."  *Id*.

There is no question that plaintiff was ultimately responsible for the welfare of the children while his wife was at work.  However, plaintiff would not state exactly what he does when left in charge of the children.  In this regard, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible.  PageID.54.  Based on this record, the Court does not agree with plaintiff's claim that the ALJ's

13

opinion was a collection of misrepresentations that "would probably be sanctionable" in Federal

Court.  *See* PageID.696-697.  Accordingly, the plaintiff's claim of error will be denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  The Commissioner's

decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this

opinion will be issued forthwith.


Dated:  March 30, 2017                        /s/ Ray Kent_____
                                              RAY KENT
                                              United States Magistrate Judge

14